FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

DEC 10 2015

JAMES W. McCORMACK, CLERK
By: _____ DEP CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

JONATHAN OGLE, on behalf of himself
and all others similarly situated,

        Plaintiff,

v.

VIZIO, INC.,

        Defendant.

Case No. 4:15cv754

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

This case assigned to District Judge **Wright**
and to Magistrate Judge **Ray**

COMES NOW, Plaintiff Jonathan Ogle ("Plaintiff"), who brings this Complaint against Defendant Vizio, Inc. ("Defendant" or "Vizio" or the "Company"), and alleges as follows:

## INTRODUCTION

1. Vizio is an electronics company that purports to deliver innovative products at significant savings. Vizio manufactures a series of Internet-enabled televisions ("Smart TVs"), which allow consumers to watch cable or satellite programs, connect to Blu-ray or DVD players, and connect to the Internet to view programs online through third-party services like Netflix, YouTube, and dozens of other services.

2. Beyond making a profit from the sale of its merchandise, Vizio also monetizes its Smart TVs by embedding them with software that surreptitiously tracks and records consumers' information (including, but not limited to, each television program specifically requested through a service or viewed by an individual consumer). Additionally, Vizio's Smart TVs acquire information related to a consumer's home wireless Internet network ("WiFi network" or "WiFi") and all devices connected thereto (such as smartphones, tablets, and personal computers, among other devices). This information includes the consumer's home network IP address, as well as the IP addresses and other unique identifiers associated with the devices on the consumer's home

WiFi networks. Upon information and belief, the affected Smart TVs are the following models: M-Series, E-Series, P-Series, and Reference Series.

3. Vizio then sells that highly sensitive, personally-identifiable information to third-party data aggregators who can potentially track an individual consumer across all devices that consumer has connected to her home WiFi network. The third-party advertisers can then target advertisements to the consumer via those devices (including non-Vizio products) based on inferences drawn from consumers' television viewing histories.

4. Simply put, Vizio profits from violating its consumers' privacy by tracking and selling personally-identifiable information, in a manner that vastly exceeds the reasonable expectations of a consumer, and all without the consumers' consent. Vizio does this in the consumers' homes, areas traditionally recognized as zones of privacy.

5. Consumers do not consent to this sophisticated, technical, and invasive data aggregation. Vizio has created a tracking feature on all of its Smart TVs called "Smart Interactivity." Consumers are not required to consent to this feature, nor are they even made aware of this feature through any disclosures from Vizio. The Smart Interactivity feature is activated by default, meaning consumers are automatically opted-in to the invasive tracking feature on all Vizio Smart TVs. Further, should a consumer become aware of the invasive nature of Smart Interactivity, Vizio does not provide a clear and conspicuous mechanism to opt out of this feature.

6. Accordingly, Vizio's acts and practices violate the Video Privacy Protection Act, 18 U.S.C. § 2710 (the "VPPA"); violate state consumer protection laws, including the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-101, *et seq.*; and amount to acts of unjust enrichment. Plaintiff seeks to bring a class action on behalf of a national class of all persons in the United States who purchased a Smart TV from Vizio, as well as an Arkansas Subclass of all persons in the State of Arkansas who purchased a Smart TV from Vizio.

## PARTIES

7. Plaintiff Jonathan Ogle is a resident of Pulaski County, Arkansas and is an owner of an M-Series Vizio Smart TV, model number M421VT.

8. Defendant Vizio, Inc. is a California corporation with its principal place of business located at 39 Tesla, Irvine, California 92618.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act of 2005, which, inter alia, amends 28 U.S.C. § 1332 to add subsection (d), which confers jurisdiction over class actions where, as here, "any member of a class is a citizen of a State different from any other Defendant," and the aggregated amount in controversy exceeds five million dollars. *See* 28 U.S.C. § 1332(d)(2) and (6).

10. This Court has jurisdiction over Defendant because it does business in Arkansas and upon information and belief Defendant's conduct that gives rise to this complaint, as further described below, occurred within and/or was implemented, authorized, or ratified in Arkansas.

11. In accordance with 28 U.S.C. § 1391, venue is proper in this district because a substantial part of the conduct complained of herein occurred in this District.

## COMMON FACTUAL ALLEGATIONS

12. Vizio is a leading manufacturer of smart high-definition TVs. Vizio held the number two unit share position in the United States in 2014, generating net sales of over three billion dollars in both 2013 and 2014, each.[1]

13. Vizio's Smart TVs allow a consumer to watch more than just traditional cable and satellite programs. Most prominently, Smart TVs connect to the consumer's home WiFi network and allow access to a plethora of third-party, online entertainment service providers like Netflix, Amazon Prime, and Hulu. Through its Vizio Internet Applications ("VIA"), Vizio Smart TVs can access and display whatever consumers wish to hear or view, be it music, video games,

---

[1] "Company Overview," Vizio Form S-1, filed July 24, 2015 (available at https://www.sec.gov/Archives/edgar/data/1648158/000119312515262817/d946612ds1.htm).

news, weather, or any variety of movies and television programs. Vizio's Smart TVs are a sole medium warehouse in which a consumer can request, purchase, obtain, and view audio-visual entertainment.

### I. Vizio's Data Aggregation and Business with Third Party Advertisers

14. Vizio has figured out a way to transform its Smart TVs' connectivity into further profit, in a manner that surreptitiously and unlawfully invades consumers' privacy. Vizio created a tracking feature, "Smart Interactivity," which it embedded in its Smart TVs to collect information related to the precise content consumers view or listen to. Specifically, Vizio analyzes snippets of the specific content one is viewing on a Smart TV, whether on traditional television or streaming services such as Netflix, Amazon Prime, or Hulu. Vizio notates the specific content, as well as the time and date, the source of the programming, and whether the content was watched live or was prerecorded.

15. Beyond collecting this highly personal information, Vizio Smart TV's also scan consumers' home WiFi networks, in order to identify and catalog all *other* devices connected to those WiFi networks.

16. Vizio then sells the consumer's viewing history, as well as IP addresses and other unique identifiers for wireless devices on the consumer's WiFi network, to third party advertisers and data aggregators, who may then target individual consumers not only through their Smart TVs, but also through any other devices that were connected to the consumer's WiFi network, including smart phones, laptops, tablets, gaming systems, and desktop computers. Vizio's ability to collect information about these devices, in *addition* to information about consumers' viewing habits via their Smart TVs, makes its data set particularly appealing to third party aggregators. A data aggregator would be able to tie an individual's television-watching or music-streaming habits (associated with the Smart TV) to activity related to the same consumer's household computer, smartphones, tablets, and any other devices that connected to the consumer's home WiFi.

17. This sensitive, personally-identifiable information that Vizio collects, when aggregated, allows those data aggregators and advertisers to draw rich inferences about the lives and proclivities of the consumers at issue. Amassing personal data enables these third parties to profile and ultimately manipulate unsuspecting consumers. Thus, the viewing data, network identifiers, and device identifiers of Vizio's consumers are highly lucrative property for Vizio.

18. Although Vizio characterizes this private data it gathers as "Non-Personal Information," pundits have been quick to challenge that assertion. Specifically addressing Vizio's Smart TVs and Smart Interactivity, one tech publication noted:

> "Non-personally identifiable information" is a contradiction in terms, particularly when the companies in question have access to mobile data. The entire point of Vizio's advertising push is to sell this information to companies so they can track you on multiple devices. In order to do *that*, they're going to need to find those devices. If an advertiser can pick up on the fact that you watch, say, *Arrow* in order to send you ads enticing you to watch *The Flash*, then that advertiser *effectively* knows you who you are.[2]

19. This is particularly important with regard to Vizio's collection of a consumer's IP address, which is a unique, personally-identifiable piece of information. An IP address designates a specific Internet-enabled device within a specific household (or even the household's WiFi network), and thus is as readily traceable (and unchangeable) for a consumer as her home address, name, or Social Security Number. This is borne out by the fact that data aggregators (the entities buying consumers' data from Vizio, for example) are employing ever more sophisticated cross-referencing and predictive analytics techniques to identify *individual consumers* by unique device identifiers such as IP addresses.[3]

---

[2] Joel Hruska, "Vizio TVs Caught Tracking Viewing Habits, Selling Data to Advertisers." ExtremeTech (Nov. 10, 2015) (available at http://www.extremetech.com/internet/217762-vizio-tvs-caught-tracking-viewing-habits-selling-data-to-advertisers) (emphasis original).

[3] Julia Angwin, "Own a Vizio Smart TV? It's Watching You." *Pro Publica* (Nov. 9, 2015) (available at http://www.propublica.org/article/own-a-vizio-smart-tv-its-watching-you#) ("IP addresses can increasingly be linked to individuals. Data broker Experian, for instance, offers a 'data enrichment' service that provide 'hundreds of attributes' such as age, profession and 'wealth indicators' tied to a particular IP address.").

20.     Vizio sells Plaintiff's and Class members' personally-identifiable information, which can then be resold by any company that wishes to buy it. Companies that acquire data from Vizio or one of its partners can then retain that information indefinitely and use it for any purpose. As the above-cited article notes, Smart Interactivity "becomes a *de facto* beachhead that [Vizio] argues can be used to gather and sell user data with impunity."[4]

21.     Vizio's selling of Plaintiff's and Class members' personally identifiable information puts consumers at risk of crime, discrimination, and embarrassment. More fundamentally, however, Vizio's acts and practices complained of herein violate core privacy rights and principles of autonomy:

> [A] measure of personal isolation and personal control over the conditions of its abandonment is of the very essence of personal freedom and dignity.... A man whose home may be entered at the will of another, whose conversations may be overheard at the will of another, whose marital and familial intimacies may be overseen at the will of another, is less of a man, has less human dignity, on that account. He who may intrude upon another at will is the master of the other and, in fact, intrusion is a primary weapon of the tyrant.

Bloustein, "Privacy as an Aspect of Human Dignity: An Answer to Dean Prosser," 39 N.Y.U. L.Rev. 962, 973-974 (1964) (fn. omitted).

## II.     Vizio Invades Consumers' Privacy Without Consent

22.     Vizio invades the privacy of consumers without ever obtaining their consent. The Smart Interactivity feature is enabled by default on all Vizio Smart TVs. Vizio does not disclose the existence of its Smart Interactivity feature in its advertising, Smart TV setup, or the TV's packaging. Vizio does not alert consumers while they are watching Vizio's Smart TV that they are being tracked, nor does Vizio require consumers to sign an agreement to the terms or privacy policies that discuss Smart Interactivity and Vizio's practice of selling consumer information to third party advertisers and data brokers.

---

[4] Hruska, n. 2, *supra*.

23.     Instead, Vizio buries its privacy policy in a fine-print hyperlink at the bottom of its website—which a customer is neither required nor likely to visit prior to purchasing or utilizing a Smart TV.  Just as a brick and mortar video store cannot be said to obtain consent to the monitoring and selling its customers' viewing histories by "disclosing" its activities on an obscure link on its website, Defendant cannot be said to have obtained the consent of Plaintiff and Class members via a website wholly unrelated to the purchase of its Smart TVs.

24.     Consumers must physically opt-out of this monitoring feature, and even then they may only do so if they are aware (1) of what the feature entails and (2) that it is automatically activated.  Moreover, to the extent that a consumer does become aware of the invasive purpose of Smart Interactivity and wishes to opt out of the feature, she must hunt through multiple, non-intuitive menu settings on her Smart TV in order to disable the feature.

## FACTUAL ALLEGATIONS SPECIFIC TO NAMED PLAINTIFF

25.     Plaintiff purchased a Vizio M421VT, which is one of Defendant's Smart TVs enabled with Smart Interactivity.  Since purchasing that television, Plaintiff has connected that Smart TV to his home wireless network and has used that television to watch shows and movies, including via connected applications.  At no time was Plaintiff required to consent to having this activity—or any additional activity related to the use of WiFi in his home—tracked by Vizio.  Further, at no time did Plaintiff consent to having this activity—or any additional activity related to the use of WiFi in his home—tracked by Vizio.

26.     At no time did Vizio disclose to Plaintiff that his Smart TV would track either the content he viewed via his Smart TV or any other activity he engaged in via his home WiFi network.

27.     Had Plaintiff known that Vizio employed such tracking functionality, he would not have purchased his Smart TV.

28.     Plaintiff has suffered damages as the result of Vizio's surreptitious monitoring of his behavior, via his Smart TV.

7

## CLASS ACTION ALLEGATIONS

29. Plaintiff brings this action against Vizio as a class action pursuant to the Federal Rules of Civil Procedure 23(a) and 23(b)(2) and (b)(3).

30. Plaintiff seeks certification of this action on behalf of the following national Class and Arkansas Subclass (collectively, the "Class"):

> **National Class:** all persons in the United States who purchased a Smart TV from Vizio.
>
> **Arkansas Subclass:** all persons in the State of Arkansas who purchased a Smart TV from Vizio.

31. Plaintiff reserves the right to modify or refine the Class definition based upon discovery.

32. Excluded from the Class are Defendant, any parent, subsidiary, affiliate, or controlled person of Defendant, as well as its officers and directors. Also excluded is any judge who may preside over this cause of action.

33. The exact number of the Class, as herein identified and described, is not known, but it is estimated to number in the millions. The Class is so numerous that joinder of individual members herein is impracticable.

34. There are common questions of law and fact in the action that relate to and affect the rights of each member of the Class and the relief sought is common to the entire Class. In particular, the common questions of fact and law include:

> (A) Whether Defendant's acts and practices complained of herein violate 18 U.S.C. § 2710;
>
> (B) Whether Defendant's acts and practices complained of herein violate Ark. Code Ann. § 4-88-101, *et seq.*;
>
> (C) Whether Defendant has been unjustly enriched; and
>
> (D) Whether members of the Class have sustained damages, and, if so, in what amount.

35. The claims of the Plaintiff, who is representative of the Class herein, are typical of the claims of the proposed Class, in that the claims of all members of the proposed Class, including Plaintiff, depend on a showing of the acts of Defendant giving rise to the right of Plaintiff to the relief sought herein. There is no conflict between the individually named Plaintiff and other members of the proposed Class with respect to this action, or with respect to the claims for relief set forth herein.

36. The named Plaintiff is the representative party for the Class, and is able to, and will fairly and adequately protect the interests of the Class. The attorneys for Plaintiff and the Class are experienced and capable in complex civil litigation, privacy litigation, consumer fraud litigation and class actions.

37. The class action procedure is superior to all other available methods for the fair and efficient adjudication of this controversy. This action would permit a large number of injured persons to prosecute their common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of evidence and effort. Class treatment also would permit the adjudication of claims by class members whose claims are too small and complex to individually litigate against a large corporate defendant.

**COUNT I**
**Violation Of The Video Privacy Protection Act**
**18 U.S.C. § 2710**
**(Brought on Behalf of the National Class)**

38. Plaintiff repeats and realleges all preceding paragraphs contained herein.

39. Defendant is a "video tape service provider[]," because it "engage[s] in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4).

40. Additionally, and pursuant to 18 U.S.C. § 2710(a)(4), Defendant is a "video tape service provider[]," because information is"disclosure[d]" to Defendant, by "video tape service providers," in a manner contemplated under subparagraphs (D) and (E) of 18 U.S.C. § 2710(b)(2).

41. Plaintiff is a "consumer," pursuant to 18 U.S.C. § 2710(a)(1).

42. In the course of Plaintiff's viewing of content via his Smart TV, Defendant collected information about the specific content Plaintiff viewed, acquiring such information along with personally-identifiable information about Plaintiff, including but not limited to his home IP address. Such information constitutes "personally identifiable information" pursuant to 18 U.S.C. § 2710(a)(3).

43. Defendant has disclosed and continues to disclose Plaintiff's personally-identifiable information to third parties. Such acts constitute "knowing[] disclosures" or "personally identifiable information," as prohibited by 18 U.S.C. § 2710(a)(1).

44. Plaintiff has not consented to either Defendant's acquisition of his personally-identifiable information or Defendant's knowing disclosure of such personally identifiable-information to third parties.

45. As a result of Defendant's conduct described herein, Plaintiff and the Class have suffered injury, and are accordingly entitled to seek and do seek (1) an injunction prohibiting Defendant from continuing its interception of Plaintiff's and Class members' personally-identifiable information; (2) an injunction requiring Defendant to purge any data obtained in violation of the VPPA; (3) actual damages; (4) statutory damages; (5) punitive damages; and (6) attorney's fees and costs pursuant to 18 U.S.C. § 2710(c).

### COUNT II
### Unjust Enrichment
### (Brought on Behalf of the National Class)

46. Plaintiff repeats and realleges all preceding paragraphs contained herein.

47. Plaintiff and the Class conferred benefits upon the Defendant by paying for Defendant's Smart TVs, which suffered a critical and undisclosed defect in the form of the automatically enabled Smart Interactivity feature. Plaintiff and the Class conferred an additional benefit upon Defendant by unknowingly providing Defendant with their personally identifiable information.

48. Although Defendant received earnings and benefits from the sale of its Smart TVs, Defendant retained these revenues under conditions that would constitute an unjust enrichment of those revenues.

49. As a direct and proximate result of Defendant's actions, Plaintiff and the Class are entitled to restitution on the full amount by which the Defendant has been unjustly enriched and should be required to disgorge same to Plaintiff and the Class.

### COUNT III
### Violation Of The Arkansas Deceptive Trade Practices Act
### Ark. Code Ann. § 4-88-101, *et seq.*
### (Brought on Behalf of the Arkansas Subclass)

50. Plaintiff repeats and realleges all preceding paragraphs contained herein.

51. Plaintiff and Defendant area "persons," pursuant to Ark. Code Ann. § 4-88-102(5).

52. Defendant's acts and practices complained of herein—including but not limited to installing tracking software on its Smart TVs, surreptitiously monitoring and acquiring the personally identifiable information of Plaintiff and Class members, and selling that information to third parties without consent—amount to "[d]eceptive and unconscionable trade practices," as proscribed by Ark Code Ann. § 4-88-107(a).

53. Additionally, Defendant deliberately concealed, in connection with the sale and/or advertisement of its Smart TVs, the surreptitious monitoring properties of said televisions, in violation of Ark. Code Ann. § 4-88-108.

54. Plaintiff and Class members suffered actual injury as the result of Defendant's acts, practices, and omissions described herein.

55. As a result of Defendant's violations of the Arkansas Deceptive Trade Practices Act, Plaintiff and Class members are entitled to—and accordingly seek—actual damages and attorney's fees, pursuant to Ark. Code Ann. § 4-88-113(f).

### RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated,

respectfully requests that this Court:

a) determine that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, that Plaintiff is a proper class representative, and approve Plaintiff's Counsel as counsel for the Class;

b) enter an order demanding that Defendant pay monetary damages to the Plaintiff, and all proposed Class members;

c) enter an order providing Plaintiff and Class members with the injunctive relief sought in this Complaint;

d) enter an order declaring that Defendant's actions are unlawful; and

e) grant such other legal and equitable relief as the Court may deem appropriate, including costs and attorneys' fees.

## JURY DEMAND.

Plaintiff and the Class members hereby request a trial by jury.

Dated: December 10, 2015

Respectfully submitted,

By: _____
CARNEY BATES & PULLIAM, PLLC
Joseph Henry ("Hank") Bates (ABN 98063)
hbates@cbplaw.com
J. Allen Carney (ABN 94122)
acarney@cbplaw.com
Randall K. Pulliam (ABN 98105)
rpulliam@cbplaw.com
David Slade
dslade@cbplaw.com
2800 Cantrell, Suite 510
Little Rock, AR 72202
Telephone: (501) 312-8500
Facsimile: (501) 312-8505

*Attorneys for Plaintiff Jonathan Ogle*

12